UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RONNIE LEE CRUICKSHANK,

                    Petitioner,

    v.

UNITED STATES OF AMERICA,

                    Respondent.

CASE NO. C20-0924JLR

ORDER DENYING 28 U.S.C.
§ 2255 MOTION TO VACATE
JUDGMENT

## I.    INTRODUCTION

Before the court is Petitioner Ronnie Lee Cruickshank's motion to vacate the judgment in his criminal matter under 28 U.S.C. § 2255. (Mot (Dkt. # 1); *see also* Reply (Dkt. # 6).) Mr. Cruickshank contends that the court must vacate his conviction in his criminal matter in light of the Supreme Court's decision in *Rehaif v. United States*, __ U.S. __, 139 S. Ct. 2191 (2019). Respondent the United States of America ("the Government") opposes Mr. Cruickshank's motion. (Resp. (Dkt. # 5).) Neither party has

1  requested oral argument or an evidentiary hearing on Mr. Cruickshank's motion.[1]  (*See*

2  *generally* Mot.; Resp.; Reply.)  The court has considered the motion, all submissions

3  filed in support of and in opposition to the motion, the relevant portions of the record, and

4  the applicable law.  Being fully advised, the court DENIES Mr. Cruickshank's motion to

5  vacate the judgment in his criminal matter.

6  ## II.    BACKGROUND

7  On December 13, 2017, the Government charged Mr. Cruickshank by complaint

8  with two counts of distribution of methamphetamine, in violation of 18 U.S.C

9  §§ 841(a)(1) and (b)(1)(B) and one count of felon in possession of a firearm in violation

10  of 18 U.S.C § 922(g)(1).  (Compl. (CR Dkt.[2] # 1).)  The Government accused Mr.

11  Cruickshank of selling 98% pure methamphetamine to an undercover Drug Enforcement

12  Administration officer on two separate occasions.  (*See id.* at 4-7.)  The Government

13  alleged by affidavit that Mr. Cruickshank had sold a half pound of methamphetamine to

14  the undercover officer during the first controlled purchase and a pound of

15  methamphetamine during the second controlled purchase.  (*See id.*)  Officers searched

16  Mr. Cruickshank's residence in conjunction with his arrest for distribution and found a

17  9mm handgun.  (*See id.* at 7.)  With respect to the charge of felon in possession of a

18  firearm, the complaint alleges that Mr. Cruickshank had previously been convicted, as an

19

20  _____

21  [1] Further, because the court determines that the records and files conclusively show that Mr. Cruickshank is not entitled to § 2255 relief, the court concludes that there is no need for an evidentiary hearing.

22  [2] The court uses the shorthand "CR Dkt." when citing to documents in the docket of Mr. Cruickshank's criminal case, *United States v. Cruickshank*, No. CR17-0323JLR (W.D. Wash.).

1    adult, of six crimes punishable by imprisonment for a term exceeding one year, including

2    a conviction for conspiracy to manufacture methamphetamine on January 11, 2008.[3]  (*Id.*

3    at 2-3.)

4          On December 20, 2017, the Grand Jury returned an indictment against Mr.

5    Cruickshank for two counts of distribution of methamphetamine, in violation of 18 U.S.C

6    §§ 841(a)(1) and (b)(1)(B) and one count of felon in possession of a firearm in violation

7    of 18 U.S.C § 922(g)(1).  (Indictment (CR Dkt. # 11).)  The indictment recites Mr.

8    Cruickshank's six previous convictions for crimes punishable by imprisonment for a term

9    exceeding one year and alleges that Mr. Cruickshank knowingly possessed the handgun.

10   (*Id.* at 2-3.)

11         At his arraignment on January 2, 2018, Mr. Cruickshank pleaded not guilty to all

12   charges.  (*See* 1/2/18 Min. Entry (CR Dkt. # 17).)  On May 30, 2018, Mr. Cruickshank

13   changed his plea to guilty to one charge of distribution of methamphetamine and the

14   charge of felon in possession.  (*See* 5/30/18 Min. Entry (CR Dkt. # 36); Plea Agreement

15   (CR Dkt. # 38); *see also* R&R (CR Dkt. # 39); Order of Acceptance (CR Dkt. # 40).)

16   The plea agreement recites the following elements for the felon in possession charge:

17   "*First*, the defendant knowingly possessed a firearm; *Second*, the firearm had been

18   shipped or transported from one state to another or between a foreign nation and the

19   United States; and *Third*, at the time the defendant possessed the firearm, the defendant

20

21         [3] Federal District Judge Robert S. Lasnik sentenced Mr. Cruickshank to 84
     months' imprisonment for that crime. (*See* Presentence Investigation Report ("PSR") (CR
22   Dkt. # 44) (sealed) ¶ 44.)

1   had been convicted of a crime punishable by imprisonment for a term exceeding one

2   year." (Plea Agreement at 2 (emphasis in original).)  The plea agreement also specifies

3   that Mr. Cruickshank waived "any right to bring a collateral attack against the conviction

4   and sentence, including any restitution order imposed, except as it may relate to the

5   effectiveness of legal representation[.]" (*Id.* at 10.)

6          On October 11, 2018, the court sentenced Mr. Cruickshank to 72 months of

7   imprisonment on each of the two counts, to be served concurrently, followed by five

8   years of supervised release. (Judgment (CR Dkt. # 51) at 1-3.)

9          On June 21, 2019, the Supreme Court issued its decision in *Rehaif*, in which it

10  overruled longstanding precedent from the Ninth Circuit—and every other circuit that

11  had addressed the issue—concerning the scope of 18 U.S.C. § 922(g)(1).  The Supreme

12  Court held that § 922(g)(1) requires that the individual know not only that he possessed a

13  firearm but also that he belonged to one of the prohibited categories listed in § 922(g)(1)

14  when he possessed the firearm. *See Rehaif*, 139 S. Ct. at 2194.  Before *Rehaif*, the

15  Government could secure a felon-in-possession conviction by proving that the defendant

16  knowingly possessed a firearm, even if the defendant did not know that he had been

17  convicted of a felony—defined under the statute as a crime punishable by more than one

18  year in prison—or was otherwise within a category of persons who cannot legally possess

19  a firearm. *See United States v. Enslin*, 327 F.3d 788, 798 (9th Cir. 2003) (citing *United

20  States v. Miller*, 105 F.3d 552, 555 (9th Cir. 1997) (holding that the knowledge

21  requirement "only applies to the possession element of § 922(g)(1), not to . . . felon

22  status.")).  After the Supreme Court's decision in *Rehaif*, the Government must now

ORDER - 4

1    "prove both that the defendant knew he possessed a firearm and that he knew he

2    belonged to the relevant category of persons barred from possessing a firearm."  139 S.

3    Ct. at 2200.

4        On June 16, 2020, Mr. Cruickshank filed the instant 28 U.S.C. § 2255 motion to

5    vacate his conviction and set aside the judgment in his criminal case.  (*See generally*

6    Mot.)  In his petition, Mr. Cruickshank contends that the court must vacate his guilty plea

7    under 18 U.S.C. § 922(g) because the plea, which omitted the element requiring his

8    knowledge of his status as a felon, was not knowing and intelligent under *Rehaif*.  Mr.

9    Cruickshank did not file a direct appeal of his conviction and sentence, nor has he

10   previously filed a § 2255 motion.  (*See generally* CR Dkt.)

11                          **III.    ANALYSIS**

12       The Government concedes that Mr. Cruickshank's § 2255 motion is timely

13   because Mr. Cruickshank filed his motion within one year of the issuance of *Rehaif*,

14   which the Government agrees announced a new substantive rule of law that applies

15   retroactively.  (Resp. at 4 (citing 28 U.S.C. § 2255(f)(3)).)  Nevertheless, the Government

16   argues that the court cannot reach the merits of this case for three reasons:  because the

17   "concurrent-sentence doctrine" provides the court discretion to dismiss the motion

18   outright; because Mr. Cruickshank waived his right to bring a collateral attack on his

19   conviction and sentence through his plea agreement; and because Mr. Cruickshank

20   procedurally defaulted his motion by failing to file a direct appeal of his conviction and

21   sentence.  Mr. Cruickshank contends that he can overcome these hurdles and that the

22   court should grant his motion on the merits.  For the reasons set forth below, the court

1    finds that Mr. Cruickshank cannot satisfy the substantial burdens placed on him to excuse

2    his procedural default, and as a result, the court need not consider the merits of Mr.

3    Cruickshank's motion.

4    **A.      Concurrent-Sentence Doctrine**

5           As a preliminary matter, the Government suggests that the court should dismiss

6    Mr. Cruickshank's motion under the concurrent-sentence doctrine.  (Resp. at 2).  This

7    doctrine "provides the court with discretion not to reach the merits of a claim attacking

8    fewer than all multiple concurrent sentences if success on the claim would not have any

9    collateral consequences or change the term of imprisonment."  *United States v. Beckham*,

10   202 F. Supp. 3d 1197, 1201 (E.D. Wash. 2016) (citing *Benton v. Maryland*, 395 U.S. 784

11   (1969)).  The Government argues that the doctrine applies here because even if the court

12   were to vacate Mr. Cruickshank's felon-in-possession conviction, Mr. Cruickshank will

13   remain subject to the concurrent 72-month sentence imposed for his narcotics conviction.

14   (Resp. at 2.)

15          The court declines to apply the concurrent-sentence doctrine.  In *United States v.*

16   *DeBright*, 730 F.2d 1255, 1260 (9th Cir. 1984) (*en banc*), the Ninth Circuit rejected the

17   use of the concurrent-sentence doctrine as a discretionary means of avoiding review of

18   criminal convictions on direct appeal.  The Ninth Circuit expressed "serious

19   doubts . . . about [its] ability to ascertain all the adverse collateral legal consequences of

20   unreviewed convictions" and concluded that addressing the merits of all convictions

21   before the court on appeal would "guarantee that no individual will suffer because of our

22   inability to foretell the future effects of an unreviewed conviction."  *DeBright*, 730 F.2d

at 1258, 1259; *see also United States v. Adams*, 814 F.3d 178, 181 n.1 (4th Cir. 2016)

("Felony convictions carry a myriad of collateral consequences above and beyond time in

prison, including the possibility that a future sentence will be enhanced based on the

challenged conviction, the possibility of using the conviction for future impeachment,

and societal stigma.").  Although *DeBright* did not address the use of the

concurrent-sentence doctrine in the § 2255 context, the court has found no Ninth Circuit

case since *DeBright* that has applied the concurrent-sentence doctrine to dismiss a § 2255

petition.  The court is persuaded that the Ninth Circuit's reasoning in *DeBright* applies

with equal strength in the § 2255 context and declines to dismiss Mr. Cruickshank's

motion under the concurrent-sentence doctrine.

**B.     Waiver**

The Government next argues that Mr. Cruickshank waived his right to file a

§ 2255 motion in his plea agreement.  (*See* Resp. at 3; *see* Plea Agreement at 10.)  The

Government asserts that the waiver applies because Mr. Cruickshank "does not contend

that his plea agreement is defective in any manner."  (*See* Resp. at 3.)  Mr. Cruickshank's

sole claim, however, is that his plea was not knowing and intelligent because he was not

informed of an element of one of his offenses.  (*See* Mot. at 5.)  Because the court finds,

as discussed below, that Mr. Cruickshank's motion is procedurally defaulted, the court

declines to resolve the issue of waiver.

**C.     Procedural Default**

The Supreme Court has strictly limited the circumstances under which a defendant

may collaterally attack his guilty plea.  *Bousley v. United States*, 523 U.S. 614, 621

(1998).  In general, 'the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Id.* (citations omitted).  The parties do not dispute that Mr. Cruickshank's 28 U.S.C. § 2255 petition is procedurally defaulted because he never challenged his plea at his sentencing or on direct appeal.  (*See* Resp. at 6; Reply at 3.)

Mr. Cruickshank, however, argues that he can overcome his procedural default by showing both cause excusing his procedural default and actual prejudice resulting from the errors of which he complains.  (Reply at 3 (citing *Bousley*, 523 U.S. at 622)); *see also United States v. Frady*, 456 U.S. 152, 168 (1982).  The court concludes that he cannot meet this burden.

### 1.    Cause

A defendant can demonstrate cause sufficient to excuse a default by showing that an "objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule" such as a "factual or legal basis for a claim [that] was not reasonably available to counsel." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  A claim is considered unavailable only if it is based on a newly-recognized rule that "'is so novel that its legal basis is not reasonably available to counsel,'" and thus a defendant could not have been expected to raise the issue earlier. *Bousley*, 523 U.S. at 622 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)).

Mr. Cruickshank argues that the legal basis for his claim was not "reasonably available" at the time he entered his plea because the circuit courts unanimously held, prior to *Rehaif*, that 18 U.S.C. § 922(g) did not require proof that the defendant knew of his

1    prohibited status at the time he possessed the firearm.  (Reply at 3-4 (citing cases).)

2        This court has previously rejected a petitioner's argument that he had cause

3    excusing his procedural default of a *Rehaif* claim based on the state of the law prior to

4    *Rehaif*.  In *Mujahidh v. United States*, No. C19-1852JLR, 2020 WL 1330750 (W.D.

5    Wash. Mar. 23, 2020), this court held that the petitioner could not demonstrate cause

6    because the issue of whether the scienter requirement applied to a defendant's prohibited

7    status under § 922(g) was not "so novel" at the time of Mr. Mujahidh's plea and

8    sentencing so as not to have been available to counsel.  *Mujahidh*, 2020 WL 1330750,

9    at *3.  Observing that the issue had been litigated for many years, the court concluded

10   that the issue of whether Mr. Mujahidh's knowledge of his prohibited status was a

11   required element for a conviction under § 922(g) was "reasonably available" to his

12   counsel at the time of his plea.  *Id.* (citing cases).  As a result, the court held that Mr.

13   Mujahidh could not establish cause and his *Rehaif* claim was procedurally defaulted.  *Id.*

14       Mr. Cruickshank argues that his case can be distinguished from *Mujahidh* because

15   Mr. Mujahidh filed his § 2255 petition *pro se* and therefore did not have the benefit of

16   counsel to direct the court's attention to the "near-unanimous body of lower court

17   authority" that would support a finding of cause.  (Reply at 4 (quoting *Reed*, 468 U.S. at

18   17).)  The court, however, reads the cases it cites in its orders, and was aware at the time

19   it issued *Mujahidh* of the pre-*Rehaif* consensus among the Courts of Appeals on the

20   knowledge-of-status issue.  Indeed, the dissent in *Rehaif* points out that "every single

21   Court of Appeals to address the question" had concluded that the Government was not

22   required to prove that the defendant knew of his prohibited status at the time he possessed

1  the firearm in order to secure a conviction under 18 U.S.C. § 922(g).  *Rehaif*, 139 S. Ct.

2  at 2201 (Alito, J., dissenting).  Furthermore, district courts throughout the circuits have,

3  as this court did in *Mujahid*, deemed the knowledge-of-status issue to have been

4  reasonably available prior to *Rehaif*.  *See, e.g.*, *United States v. Catlett*, No. 10-CR-324-1,

5  2020 WL 5982266, at *2 (E.D. Pa. Oct. 8, 2020) (Third Circuit); *Beck v. United States*,

6  No. 20-CV-67, 2020 WL 5942578, at *14 (E.D. Mo. Oct. 7, 2020) (Eighth Circuit);

7  *Gayle v. United States*, No. 19-CV-62904, 2020 WL 4339359, at *4 (S.D. Fla. July 28,

8  2020) (Eleventh Circuit); *United States v. Vasquez-Ahumada*, No. 18-CR-5, 2020 WL

9  3213397, at *2 (W.D. Va. June 15, 2020) (Fourth Circuit); *United States v. Hisey*, No.

10  18-40063-01-DDC, 2020 WL 2915036, at *3-4 (D. Kan. June 3, 2020) (Tenth Circuit);

11  *United States v. Scott*, No. 17-CR-23, 2020 WL 1030927, at *13 (E.D. La. Mar. 3, 2020)

12  (Fifth Circuit); *Gray v. United States*, No. 19-C-607, 2020 WL 127646, at *3 (M.D.

13  Tenn. Jan. 10, 2020) (Sixth Circuit).[4]  The court does not, therefore, depart from its prior

14  holding in *Mujahid* that *Rehaif* did not create a newly-recognized and novel rule that

15  would support a finding of cause.

16      **2.    Actual Prejudice**

17      The court further finds that Mr. Cruickshank cannot demonstrate that the *Rehaif*

18  error in his case resulted in actual prejudice.  To demonstrate actual prejudice to

19  overcome a procedural default, Mr. Cruickshank must show "not merely that the errors

20

21  _____

22  [4] A minority of courts, however, have concluded that the knowledge of status issue was
not reasonably available prior to *Rehaif*.  *See, e.g.*, *United States v. Torres*, No.
211CR141JCMCWH, 2020 WL 5518606, at *3 (D. Nev. Sept. 14, 2020) (Ninth Circuit).

1   at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and

2   substantial disadvantage, infecting his entire trial with error of constitutional

3   dimensions." *Murray*, 477 U.S. at 494 (emphasis in original).

4          Although both parties cite the above language from *Murray*, they disagree on the

5   specific standard that Mr. Cruickshank must meet in order to show actual prejudice.

6   Mindful of the Supreme Court's admonition that the standard for finding cause and

7   prejudice to excuse a procedural default is a "significantly higher hurdle than would exist

8   on direct appeal," *Frady*, 456 U.S. at 166, the court agrees with the Government that, at

9   minimum, Mr. Cruickshank must show that the court's *Rehaif* error would have been

10  reversible plain error if it were raised on direct appeal.  (*See* Resp. at 8.)  The Ninth

11  Circuit has determined, in a recent unpublished case, that a defendant bringing a direct

12  appeal of a *Rehaif* error must show "a reasonable probability that, but for the error, he

13  would not have entered the plea."  *United States v. Espinoza*, 816 F. App'x 82, 84 (9th

14  Cir. 2020) (quoting *United States v. Bain*, 925 F.3d 1172, 1178 (2020)).  Thus, Mr.

15  Cruickshank must show at least a reasonable probability that, but for the *Rehaif* error, he

16  would not have pleaded guilty to the felon-in-possession charge in order to show

17  prejudice.  This he cannot do.

18         Mr. Cruickshank makes no argument, much less points to any evidence, that he

19  would have gone to trial instead of pleading guilty if he were aware that the Government

20  would have to prove that he knew he had a prior conviction for a crime punishable by

21  more than one year in prison.  *See Espinoza*, 816 F. App'x at 84.  Moreover, the record

22  before the court includes substantial evidence that Mr. Cruickshank knew of his status as

a convicted felon.  According to the presentence report prepared in his criminal case, at

the time he possessed the handgun, Mr. Cruickshank had previously received prison

sentences of 14 months and 84 months.  (PSR ¶¶ 14 & 44.)  In light of the sentences

imposed in his earlier cases, Mr. Cruickshank could not plausibly assert that a jury would

find that he was unaware of his status as a person previously convicted of an offense

punishable by more than a year in prison.[5]  *Cf. Rehaif*, 139 S. Ct. at 2198 (noting that a

defendant "who was convicted of a prior crime but sentenced only to probation" might be

able to claim that he did not know he had been convicted of a crime punishable by more

than a year of imprisonment); *Nair v. United States*, No. C19-1751JLR, 2020 WL

1515627, at *3 (W.D. Wash. Mar. 30, 2020) (excusing procedural default where the

petitioner was actually innocent because his prior crime did not meet the § 922(g)(1)

criteria).  In these circumstances, Mr. Cruickshank cannot show that the *Rehaif* error

caused him actual prejudice.

Mr. Cruickshank argues that a plain-error standard has no place in the court's

analysis of prejudice in this case.  Instead, he argues that the court must find that he

suffered actual prejudice because the omission of the knowledge-of-status element

"completely eliminat[ed] any incentive to develop defense arguments on his mental state

at the time of the firearm possession."  (Reply at 6.)  The court finds, however, that Mr.

Cruickshank's assertion that he *might* have developed defense arguments relating to his

---

[5] As the Eleventh Circuit has observed, "Most people convicted of a felony know that they are felons. . . [a]nd someone who has been convicted of felonies repeatedly is especially likely to know he is a felon."  *United States v. Innocent*, 977 F.3d 1077, 1082 (11th Cir. 2020) (internal citations omitted).

1   mental state had he known of the omitted element shows no more than a "*possibility* of

2   prejudice" rather than the "*actual* and substantial disadvantage" required under *Murray*.[6]

3          Mr. Cruickshank also argues that the court should excuse his procedural default

4   because the *Rehaif* error is structural.  (Reply at 7-8.)  The court declines to do so.  The

5   "purpose of the structural error doctrine is to ensure insistence on certain basic,

6   constitutional guarantees that should define the framework of any criminal trial."  *Weaver*

7   *v. Massachusetts*, __ U.S. __, 137 S. Ct. 1899, 1907 (2017).  The Supreme Court,

8   however, has made clear that "most constitutional errors can be harmless."  *Neder v.*

9   *United States*, 527 U.S. 1, 7 (1999) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306

10  (1991)).  The Court has found an error to be "structural, and thus subject to automatic

11  reversal, only in a very limited class of cases."  *Id.* (internal citations and quotation marks

12  omitted).[7]  Neither the Supreme Court nor the Ninth Circuit has found a constitutionally

13  invalid guilty plea to be a structural error, and all but one of the circuits to consider the

14  question have found that a *Rehaif* error in the context of a guilty plea is not structural.

15  *See United States v. Coleman*, 961 F.3d 1024, 1027 (8th Cir. 2020); *United States v.*

16  *Trujillo*, 960 F.3d 1196 (10th Cir. 2020); *United States v. Hicks*, 958 F.3d 399 (5th Cir.

17  2020); *Carlyle v. United States*, __ F. App'x __, No. 20-11399, 2020 WL 6844052, at *2

18  _____

19          [6] Mr. Cruickshank's reliance on *Henderson v. Morgan*, 426 U.S. 637 (1976) does not
    assist him here.  The Supreme Court surveyed the factual record in that case before vacating the
20  defendant's plea to second degree murder on the ground that he was not informed that an intent
    to cause the death of his victim was an element of the offense.  *Id.* at 645-46.  In addition, the
    defendant in *Henderson* asserted that he would not have pleaded guilty had he known of the
21  omitted element.  *Id.*

          [7] The Court concluded, for example, that a jury instruction that omits an element of an
22  offense is not structural because such an omission "does not *necessarily* render a criminal trial
    fundamentally unfair or an unreliable vehicle for determining guilt or innocence."  *Id.* at 9.

1    (11th Cir. Nov. 23, 2020); *see also United States v. Watso*n, 820 F. App'x 397, 400-01

2    (6th Cir. 2020) (determining that the defendant's argument that the *Rehaif* error was

3    structural was foreclosed by circuit precedent requiring a showing of prejudice on plain

4    error review in the *Rehaif* context).  *But see United States v. Gary*, 954 F.3d 194, 205 (4th

5    Cir. 2020), *r'hg en banc denied*, 963 F.3d 420 (finding that a *Rehaif* error is structural).

6    In *Rehaif* itself, the Supreme Court remanded for harmless-error review rather than

7    reversing the conviction outright.  *Rehaif*, 139 S. Ct. at 2200.  The court agrees with the

8    weight of authority that a *Rehaif* error is not structural.

9         In sum, the court concludes that Mr. Cruickshank has not demonstrated cause and

10   actual prejudice that would excuse his procedural default.  As a result, the court does not

11   address the merits of Mr. Cruickshank's motion.  Because Mr. Cruickshank's motion is

12   procedurally defaulted, the court DENIES Mr. Cruickshank's 28 U.S.C. § 2255 motion to

13   vacate the judgment in his criminal matter.

14   **D.    Certificate of Appealability**

15        Finally, the court determines that it is appropriate to issue a certificate of

16   appealability in this case.  A habeas petitioner can appeal the denial of a 28 U.S.C. §

17   2255 petition only after obtaining a "certificate of appealability."  28 U.S.C. § 2253(c);

18   *see generally United States v. Asrar*, 116 F.3d 1268, 1269-70 (9th Cir. 1997).  A court

19   may issue a certificate of appealability "only if the applicant has made a substantial

20   showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  That is, a

21   petitioner must show that "reasonable jurists could debate whether . . . the petition should

22   have been resolved in a different manner or that the issues presented were adequate to

deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted); *see Hanson v. Mahoney*, 433 F.3d 1107, 1112 (9th Cir. 2006). A certificate of appealability should be granted for any issue that the petitioner can demonstrate is debatable among jurists of reason, could be resolved differently by a different court, or is adequate to deserve encouragement to proceed further. *Jennings v. Woodford*, 290 F.3d 1006, 1010 (9th Cir. 2002). The court must resolve doubts about the propriety of a certificate of appealability in the petitioner's favor. *Id.*

Mr. Cruickshank seeks a certificate of appealability on the question of whether a *Rehaif* error in a guilty plea case is structural. (Reply at 14.) Because the courts of appeals are split on this question, *see supra* Section III.C.2, the court is persuaded that this issue is debatable among jurists of reason. The court grants Mr. Cruickshank's request for a certificate of appealability on the issue of whether a *Rehaif* error in a guilty plea case is structural error.

//

//

//

//

//

//

//

//

ORDER - 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

## IV.     CONCLUSION

For the foregoing reasons, the court DENIES Mr. Cruickshank's motion to vacate the judgment in his criminal matter under 28 U.S.C. § 2255 (Dkt. # 1) and GRANTS a certificate of appealability on the issue of whether a *Rehaif* error in a guilty plea case is structural error.

Dated this 4th day of December, 2020.

JAMES L. ROBART
United States District Judge